<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JOHN HANCOCK LIFE & HEALTH INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> CARING CONNECTIONS LLC, *et al.*, <br><br> Defendants. | No. 25-7574 (MAS) (JBD) <br><br> **MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court upon Defendant Caring Connections LLC's ("Caring Connections") Motion to Dismiss (ECF No. 19) and Defendants Arthur Feldheim ("Arthur") and Blime a/k/a Vera Feldheims' ("Vera" and collectively, the "Feldheims," and collectively with Caring Connections, "Defendants") Motion to Dismiss (ECF No. 22) Plaintiff John Hancock Life & Health Insurance Company's ("Plaintiff") Complaint (ECF No. 1). Plaintiff opposed both motions (ECF No. 25) and Defendants replied (ECF Nos. 30, 31). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons stated below, the Court grants Caring Connections' Motion to Dismiss and grants in part and denies in part the Feldheims' Motion to Dismiss.

## I.    BACKGROUND[1]

### A.    Factual Background

#### 1.    *Vera's long-term care policy*

This action arises from an insurance dispute regarding a long-term care policy. (*See generally* Compl., ECF No. 1.) Vera purchased a long-term care policy (the "Policy") from Plaintiff in or about March 2004. (*Id.* ¶¶ 2, 19.) She began making claims against the Policy in or about April 2018 "and retained Caring Connections to provide her caregivers as a home healthcare provider." (*Id.* ¶ 20.) From April 1, 2018, through November 30, 2018, "Caring Connections provided home healthcare assistance to [Vera] through three caregivers." (*Id.* ¶ 21.) Beginning in or about November 2018, Vera "stopped using caregivers from Caring Connections when the Feldheims moved from . . . New York to Lakewood, New Jersey." (*Id.* ¶ 22.) Through June 2024, however, Vera continued to pay Caring Connections a monthly fee of $2,488.80 for administrative services with funds she received from the Policy. (*Id.* ¶ 23.) During that time, Vera was receiving her actual daily care from "unknown" and "unapproved" caregivers who were not employed by Caring Connections and were, "according to [Arthur,] . . . not American citizens and [] not legally residing in the United States." (*Id.* ¶¶ 24-25.)

From March 2019 through March 2024, after Caring Connections ceased providing caregivers to Vera, and stopped signing the weekly logs submitted to Plaintiff, "an undisclosed person" signed the weekly logs. (*Id.* ¶ 26.) "At times, the signatures on those invoices submitted to [Plaintiff] were photocopies" and "[b]eginning in 2022, in many instances, a 'caregiver' did not 'sign' the logs at all." (*Id.* ¶¶ 27-28.)

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

### 2.    *Arthur's long-term care policy*

Arthur purchased his long-term care policy (the "Second Policy," and collectively with the Policy, "the Policies") from Plaintiff in or about March 2004. (*Id.* ¶ 29.) In February 2019, Arthur began making claims against the Second Policy. (*Id.* ¶ 30.) He also retained Caring Connections to act as a home healthcare provider, but "Caring Connections never provided [Arthur] with caregivers." (*Id.* ¶ 31.) Still, he "paid Caring Connections a monthly fee of $2,448.80 to process his paperwork and submit invoices to Plaintiff for reimbursement under" the Second Policy. (*Id.*) The invoices he submitted, like Vera's, reflected "an unidentified caregiver." (*Id.* ¶ 32.)

### B.    Procedural Background

Plaintiff filed its Complaint on June 5, 2025, alleging thirteen causes of action: (1) long term care insurance fraud against the Feldheims (First Cause of Action); (2) breach of contract against the Feldheims (Second Cause of Action); (3) money had and received as a result of intentional misrepresentations against the Feldheims (Third Cause of Action); (4) unjust enrichment against the Feldheims (Fourth Cause of Action); (5) conversion against the Feldheims (Fifth Cause of Action); (6) long term care insurance fraud against Caring Connections (Sixth Cause of Action); (7) aiding and abetting insurance fraud against Caring Connections (Seventh Cause of Action); (8) money had and received as a result of intentional misrepresentations against Caring Connections (Eighth Cause of Action); (9) unjust enrichment against Caring Connections (Ninth Cause of Action); (10) conversion against Caring Connections (Tenth Cause of Action); (11) declaratory judgment that there is no coverage as to Arthur (Eleventh Cause of Action); (12) declaratory judgment that there is no coverage as to Vera (Twelfth Cause of Action); and (13) declaratory judgment that Caring Connections has no entitlement to compensation (Thirteenth Cause of Action). (Compl. ¶¶ 56-141.) Caring Connections thereafter filed its Motion to Dismiss

3

(CC's Mot. to Dismiss, ECF No. 19), as did the Feldheims (Defs.' Mot. to Dismiss, ECF No. 22). Plaintiff opposed both motions (Pl.'s Opp'n Br., ECF No. 25) and Defendants replied (Defs.' Reply Br., ECF No. 30; CC's Reply Br., ECF No. 31).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure[2] 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no

---

[2] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.    DISCUSSION

Caring Connections argues that the Complaint should be dismissed because: (1) it fails to adequately allege a material misrepresentation that was made with the requisite scienter; (2) it fails to adequately allege aiding and abetting liability; (3) it fails to adequately allege a direct relationship with Caring Connections; (4) an enforceable contract exists, so Pliantiff's unjust enrichment claim is foreclosed; (5) it fails to adequately allege that Caring Connections had dominion or control over the property; (6) portions of Plaintiff's conversion claim are barred by the statute of limitations; and (7) Plaintiff's claim only seeks to address past payments and does not implicate prospective relief so declaratory judgment is improper. (CC's Moving Br. 9-26, ECF No. 19-1.)

The Feldheims argue that the Complaint should be dismissed because it is barred by the statute of limitations and fails to adequately allege: (1) a material misrepresentation that was made with the requisite scienter; (2) Plaintiff's performance of the contract, the Feldheims' non-performance, and that Plaintiff suffered a loss; (3) that Plaintiff did not expect remuneration from Defendants at the time it conferred benefits on Defendants; (4) an enforceable contract exists; and (5) Plaintiff did not have the right to immediate possession of the Feldheim's claim funds. (Defs.' Moving Br. 9-24, ECF No. 22-1.) The Feldheims also maintain that Plaintiff only seeks to address past payments and does not implicate any prospective conduct, so declaratory judgment is improper. (*Id*. at 24-25.)

### A.    Breach of Contract (Second Cause of Action)

The Feldheims argue that Plaintiff's Second Cause of Action should be dismissed because Plaintiff failed to adequately allege that: (1) Plaintiff did what the contract required it to do; (2) the Feldheims did not do what the contract required them to do; and (3) the alleged breach caused a loss to Plaintiff. (*Id.* at 15-18.)

Under New Jersey law,[3] "[t]o state a claim for breach of contract, [a plaintiff] must allege[:] (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (citing *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002)).

Here, the Court finds that Plaintiff sufficiently alleges a breach of contract claim against the Feldheims. *First*, there is no dispute that the Plaintiff and the Feldheims were parties to a valid contract—the Policies. (*See* Compl. ¶¶ 19, 29 (explaining that the Feldheims purchased the Policies in or about March 2004); Defs.' Moving Br. 3-5 (explaining that Plaintiff issued the Policies to the Feldheims and explaining the terms of the Policies).) *Second*, Plaintiff alleges that the Feldheims breached the terms of the Policies by "accepting . . . benefits" under the [] Policies "while retaining . . . unlicensed caregivers instead of . . . licensed caregivers" as "required[.]" (Compl. ¶ 73.) *Third*, Plaintiff alleges that it "has been damaged" in the amount of insurance payments it paid pursuant to the policy: $1,278,337.51. (*Id.* ¶ 74; *see id.* ¶ 1.) *Fourth*, Plaintiff alleges that it "fully [] performed its obligations under the . . . Policies . . . by paying for . . . [the] long-term care services as defined by the []Policies." (*Id.* ¶ 72.)

---

[3] The parties do not dispute that New Jersey law governs this action. (Defs.' Moving Br. 9-10, 15-16, 22 (citing New Jersey law); CC's Moving Br. 9, 14, 20-21 (same); Pl.'s Opp'n Br. 2, 12-13, 16 (same).)

Taking these allegations as true, the Court finds that Plaintiff has adequately alleged a breach of contract claim against the Feldheims. *See D'Andrea v. Gelok*, No. 22-491, 2023 WL 6307529, at *9 (D.N.J. Sep. 28, 2023) (finding that plaintiffs stated a breach of contract claim where they alleged that there was a valid contract, that defendants breached the contract, and plaintiffs sustained resulting damages); *W. Trenton Hardware, LLC v. Brooklyn Textiles, LLC*, No. 21-17662, 2024 WL 4263209, at *4 (D.N.J. Sep. 23, 2024) (finding that plaintiff sufficiently stated a breach of contract claim where plaintiff alleged that there was a valid contract, plaintiff did what the contract required them to do, defendant breached the contract, and plaintiff suffered damages).

The Feldheims also argue that the Second Cause of Action is barred by the applicable statute of limitations. (Defs.' Moving Br. at 18.) Breach of contract claims "are governed by N.J. [Stat. Ann. §] 2A:14-1, which imposes a six-year statute of limitations." *Myers v. Benucci*, No. A-2507-24, 2026 WL 585808, at *14 (N.J. Super. Ct. App. Div. Mar. 3, 2026) (citing N.J. Stat. Ann. § 2A:14-1); *see Richer Mktg. Inc. v. Fairfield Gourmet Foods Corp.*, No. 15-6793, 2017 WL 3641742, at *2 (D.N.J. Aug. 24, 2017); *McGrogan v. Till*, 771 A.2d 1187, 1188-89 (N.J. 2001).

Plaintiff contends that the discovery rule should apply, tolling the statute of limitations because the Feldheims' breach was not apparent. (Pl.'s Opp'n Br. 17-18.) "A statute of limitations defense is an affirmative defense that a defendant must usually plead in his [or her] answer." *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015) (internal citation omitted). A statute of limitations defense, however, can be raised via a Rule 12(b)(6) motion "if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Id.* (quoting *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002)). The Court may grant the instant motion only "if the face of the complaint demonstrates that [Plaintiff's] claim[ is] untimely." *Id.* (quotations and citations omitted).

7

"Through application of the discovery rule, 'the limitations clock does not commence until a plaintiff is able to discover, through the exercise of reasonable diligence, the facts that form the basis for an actionable claim against an identifiable defendant.'" *Asbury Blu Condo. Ass'n, Inc. v. Chubb Corp.*, No. A-3114-20, 2023 WL 7139900, at *8 (N.J. Super. Ct. App. Div. Oct. 31, 2023) (quoting *The Palisades at Fort Lee Condo. Ass'n, Inc. v. 100 Old Palisade, LLC*, 169 A.3d 473, 478 (N.J. 2017)). Courts, however, *generally* do not apply the discovery rule to contract-based actions because "most contract actions presume that the parties to a contract know the terms of their agreement and a breach is generally obvious and detectable with any reasonable diligence." *Id.* (emphasis added) (quoting *County of Morris v. Fauver*, 707 A.2d 958, 972 (N.J. 1998)); *but see Pruco Life Ins. Co. v. Koslowsky*, No. 14-3976, 2015 WL 4606985, at *4 (D.N.J. July 31, 2015) ("The discovery rule . . . is available for breach of contract . . . claims.").

Here, Plaintiff alleges that it did not become aware of the Feldheims' breach until it conducted an investigation into the Feldheims' claims in 2024—which is well within the applicable statute of limitations. (Compl. ¶¶ 35-37.) Plaintiff also alleges it was not aware of the breach prior to its investigation because the claims were submitted through a licensed home health care agency. (Compl. ¶ 67.) Construing the Complaint in the light most favorable to Plaintiff, the Court finds that it is plausible that the application of the discovery rule is warranted, and therefore the face of the Complaint does not demonstrate that the claim is untimely. *See Motamed v. Chubb Corp.*, No. 15-7262, 2016 WL 1162853, at *3 (D.N.J. Mar. 24, 2016) (finding that the discovery rule was applicable to plaintiff's breach of contract claim because the alleged "inadequate disclosures" were by themselves "self-concealing or undiscoverable" (citation omitted)); *Cement Masons' Union Loc. No. 592 Pension Fund v. Almand Bros. Concrete*, No. 14-5413, 2015 WL 3604747, at *4-5 (D.N.J. June 8, 2015) (denying plaintiff's motion to dismiss, because, among other things, it was

8

plausible that plaintiffs could not have reasonably discovered the breach until they conducted an audit, and it was not apparent on the face of the complaint that plaintiffs' claims were barred by the statute of limitations).

The Court, accordingly, denies the Feldheims' Motion to Dismiss as to the Second Cause of Action.

**B.     Long term insurance fraud (First and Sixth Causes of Action) and aiding and abetting insurance fraud against Caring Connections (Seventh Cause of Action)**

Defendants argue that the Complaint: (1) does not identify the alleged misrepresentations with sufficient particularity; (2) fails to adequately allege knowledge of falsity; and (3) fails to adequately allege that Defendants intended Plaintiff rely on its material representations. (Defs.' Moving Br. 9-15; CC's Moving Br. 9-16.) The Feldheims also argue that the claim is barred by the statute of limitations. (Defs.' Moving Br. 15-16.)

To state a claim of fraud under New Jersey law, a plaintiff must allege: "(1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)).

Claims of fraud must also meet the heightened pleading standard of Rule 9(b). *Id.* Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Plaintiffs "may satisfy this requirement by pleading the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *McCarthy v. Musclepharm Corp.*, No. 22-3412, 2023 WL 358561, at *6 (D.N.J. Jan. 23, 2023) (internal quotation marks and citation omitted). A plaintiff alleging a misrepresentation "also must allege

who made a misrepresentation to whom and the general content of the misrepresentation." *Duffy v. Absecon Police Dep't*, No. 17-1117, 2018 WL 3410026, at \*4 (D.N.J. July 12, 2018) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) (abrogated on other grounds)).

Here, Plaintiff does not adequately allege fraud against the Feldheims because its allegations fail to meet Rule 9's heightened pleading standard. Plaintiff makes general allegations that the Feldheims made misrepresentations about: their intentions "to use the benefits under the [Policies] to compensate 'licensed aides' but instead used the benefits . . . to employ unknown, unqualified aides[;]" and that they "would be receiving home health care services . . . from Caring Connections." (Compl. ¶¶ 60-62.) Plaintiff, however, does not allege specifically what the Feldheims did to make such misrepresentations. (*See generally* Compl.) For example, the Feldheims could have spoken to someone on the phone, written correspondence, or filled out a claim form. Plaintiff, moreover, does not allege specifically when the Feldheims made such misrepresentations. (*See generally id.*) "Such vague allegations" do not meet the heightened pleading standard for fraud claims, and "are insufficient to survive a motion to dismiss." *Abira Med. Lab'ys, LLC v. United HealthCare Servs., Inc.*, No. 24-7375, 2025 WL 965706, at \*7 (D.N.J. Mar. 31, 2025); *Inventory Recovery Corp. v. Gabriel*, No. 11-1604, 2012 WL 2990693, at \*3 (D.N.J. July 20, 2012) (dismissing plaintiff's fraud claims because plaintiff's complaint failed to identify what specific statements defendant made). The Court, accordingly, dismisses Plaintiff's First Cause of Action.[4]

---

[4] Because the Court dismisses Plaintiff's fraud claim against the Feldheims, there is no fraud for which Caring Connections could have aided and abetted. *Artesanias Hacienda Real S.A. de C.V. v. N. Mill Cap. LLC*, No. 16-4197, 2021 WL 12315467, at \*1 (E.D. Pa. Aug. 19, 2021) (explaining that "[b]ecause the predicate fraud claim is not sufficiently alleged, the aiding and abetting fraud claim against the defendant fails as well"). The Court therefore dismisses Plaintiff's Seventh Cause of Action.

Plaintiff also alleges that the Policies required caregivers to have "various certifications or qualifications" and that Caring Connections made representations "by way of invoices and logs" that it was "providing such certified, qualified caretakers" when it, in fact, did not. (Compl. ¶¶ 95-96, *see id.* ¶¶ 53-54, 61-62, 102.) While Plaintiff alleges that "[n]one of the caregivers . . . from 2018 onward . . . met [such] criteria" (*id.* ¶ 44), Plaintiff fails to allege what the specific misrepresentations contained in the invoices and logs were, and how the invoices and logs purported to show that Caring Connections was providing services (*see generally id*). The Complaint never specifies what was included within the invoices or how what was included within the invoices conveyed that Caring Connections provided such services. (*See generally id.*) As with the Complaint's allegations against the Feldheims, "[s]uch vague allegations" do not meet the heightened pleading standard required for fraud claims, and "are insufficient to survive a motion to dismiss." *Abira Med. Lab'ys*, 2025 WL 965706, at *7.

The Court, accordingly, finds that Plaintiff failed to adequately allege its fraud claim against Caring Connections and dismisses Plaintiff's Sixth Cause of Action.

### C.      Money had and received (Third and Eighth Causes of Action) and unjust enrichment (Fourth and Ninth Causes of Action)

Defendants argue that Plaintiff's money had and received, and unjust enrichment claims should be dismissed because: (1) Plaintiff did not expect remuneration from Defendants at the time it conferred benefits on Defendants; and (2) an enforceable contract governs the same subject matter. (Defs.' Moving Br. 19-22; CC's Moving Br. 20-21.) The Feldheims also argue that these claims are barred by the statute of limitations. (Defs.' Moving Br. 21-22.) Caring Connections also argues that Plaintiff fails to allege any direct relationship with Caring Connections. (CC's Moving Br. 19-20.)

11

The elements of claims for money had and received and unjust enrichment "are essentially the same[,]" so the Court analyzes the claims together. *Dougherty v. Drew Univ.*, 534 F. Supp. 3d 363, 380-81 (D.N.J. 2021). "Both are quasi-contract claims, [] and the federal courts have construed them in parallel." *Id.* at 381 (collecting cases); *see also N.Y. Pipeline Mech. Contractors, LLC v. Sabema Plumbing & Heating Co., Inc.*, No. 10-148, 2012 WL 209349, at *2 (D.N.J. Jan. 24, 2012) ("One cause of action for unjust enrichment at common law was the action in assumpsit for 'money had and received,' which is 'equitable in spirit, although legal in form, and is maintainable when the defendant has received money which in equity and good conscience belongs to the plaintiff.'" (quoting *Hartford Accident & Indem. Co. v. Benevento*, 44 A.2d 97, 99-100 (N.J. E. & A. 1945))). These quasi-contractual claims "appl[y] when a party 'received a benefit and [] retention of that benefit without payment would be unjust.'" *Dougherty*, 534 F. Supp. 3d at 379 (second alteration in original) (citing *Thieme v. Aucoin-Thieme*, 151 A.3d 545, 557 (N.J. 2016)). These claims typically arise "when a plaintiff cannot show that an express or implied contract existed, but still seeks to recover on principles of equity." *Id.* (citation omitted).

Plaintiff argues that these claims are pleaded in the alternative to its breach of contract claims which is appropriate as an alternative theory of liability. (Pl.'s Opp'n Br. 22-23.) Plaintiff is correct that it may generally plead unjust enrichment in the alternative to a breach of contract claim, however, "[a] quasi-contract claim cannot exist when there is an *enforceable* agreement between parties." *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 733-34 (D.N.J. 2008) (emphasis in original) (citing *Callano v. Oakwood Park Homes Corp.*, 219 A.2d 332, 334 (N.J. Super. Ct. App. Div. 1966)); *see also St. Paul Fire & Marine Ins. Co. v. Indem. Ins. Co. of N. Am.*, 158 A.2d 825, 828 (N.J. 1960) (explaining that "the essential requirement of unjust

12

enrichment . . . does not appear" where "the [benefit] extended by plaintiff could be accepted by defendant simply as performance of the [existing contract]").

Here, Plaintiff does not contest that there were contracts and does not dispute the validity of the contracts—the Policies—and specifically alleges that the benefits Defendants received were the payments that Plaintiff made for claims made against the Policies. (*See* Compl. ¶ 76 (noting that the payments were made for "claims against . . . [the P]olicies"); *id.* ¶ 80 (same); *id.* ¶ 113 (same); *id.* ¶ 117 (same).) This is the same conduct that formed the basis of Plaintiff's breach of contract claim. (*See, e.g., id.* ¶ 73 (explaining that the Feldheims breached the terms of the Policies by accepting payments under the Policies' benefits).) Because an enforceable agreement between the parties exists, and Plaintiff's money had and received, and unjust enrichment claims concern the same payments and conduct that form the basis of Plaintiff's breach of contract claim, Plaintiff's quasi-contract claims must be dismissed. *See Ribble Co., Inc v. Burkert Fluid Control Sys.*, No. 15-6173, 2016 WL 6886869, at *5 (D.N.J. Nov. 22, 2016) (dismissing breach of contract claim as insufficiently pled, and unjust enrichment claim as duplicative of the breach of contract claim).

The Court therefore dismisses Plaintiff's Third, Fourth, Eighth, and Ninth Causes of Action.

### D.    Conversion (Fifth and Tenth Causes of Action)

Defendants argue that Plaintiff's conversion claims should be dismissed because (1) Plaintiff did not have the right to immediate possession; (2) the economic loss doctrine precludes such claims; and (3) the claims are barred by the statute of limitations. (Defs.' Moving Br. 22-24; CC's Moving Br. 21-24.)  Caring Connections also argues that the Complaint does not

adequately allege that Caring Connections had dominion or control over the property. (CC's Moving Br. 22.)

Under New Jersey law, "[c]onversion is essentially the wrongful exercise of dominion and control over the property of another in a manner inconsistent with the other person's rights in that property." *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 771 (3d Cir. 1990). Common law conversion consists of the following elements: "(1) the existence of property, (2) the right to immediate possession thereof belonging to [the] plaintiff, and (3) the wrongful interference with that right by [the] defendant." *Austar Int'l Ltd. v. AustarPharma LLC*, 425 F. Supp. 3d 336, 357 (D.N.J. 2019) (quoting *Cap. Health Sys., Inc. v. Veznedaroglu*, No. 15-8288, 2017 WL 751855, at *10 (D.N.J. Feb. 27, 2017)). Although traditionally applied to chattels, conversion may apply to money; however, the money must "have belonged to the injured party and . . . be identifiable." *Chicago Title Ins. Co. v. Ellis*, 978 A.2d 281, 288 (N.J. Super. Ct. App. Div. 2009); *see also Applebaum v. Fabian*, No. 18-11023, 2021 WL 5833454, at *12 (D.N.J. Dec. 9, 2021), *aff'd*, No. 22-1049, 2022 WL 17090172 (3d Cir. Nov. 21, 2022) ("Conversion can be alleged over money if the plaintiff can point to, not just a legal claim for money, but a specific, segregated sum that defendant has wrongfully acquired."); *Four Pals, LLC v. Javamoon Cafe Franchise Servs., LLC*, No. A-4457-08T3, 2010 WL 3185221, at *5 (N.J. Super. Ct. App. Div. Aug. 10, 2010) ("The tort of conversion has been historically applied to chattels, and "courts have restricted its application to money to avoid turning a claim based on breach of contract into a tort claim.") (citation omitted).

The economic loss doctrine, a boundary between tort and contract, "prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract[.]" *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995). A tort remedy "does not arise from a contractual relationship unless the breaching party owes an independent

14

duty imposed by law." *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (N.J. 2002) (citation omitted). A plaintiff cannot maintain a tort claim where the complaint reflects only obligations created by an agreement and does not plead an extra-contractual duty. *See Int'l Mins. & Mining Corp. v. Citicorp N. Am., Inc.*, 736 F. Supp. 587, 597 (D.N.J. 1990) (noting that it is well-settled that an independent tort action is "not cognizable where there is no duty owed to the plaintiff other than the duty arising out of the contract itself"). In sum, to maintain a separate conversion claim, a plaintiff must allege conduct that is "extraneous to the contract." *Heyman v. Citimortgage, Inc.*, No. 14-1680, 2019 WL 2642655, at *29 (D.N.J. June 27, 2019) (citation omitted). Here, Plaintiff's Complaint fails to do so, and relies on conduct that, as previously discussed, arises out of its contractual relationship through the Policies with the Feldheims, and payments the Feldheims made to Caring Connections through claims made against those Policies. (*See generally* Compl. (explaining that the Feldheims and Caring Connections obtained the money at issue through claims against the Policies in violation of the Policies' terms).) The economic loss doctrine therefore bars Plaintiff's conversion claims. *See Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 311 (D.N.J. 2009) (applying New Jersey law) ("[T]he Court finds that [p]laintiffs' claim[] for . . . conversion [is] barred by the economic loss doctrine."); *Heyman*, 2019 WL 2642655, at *30 (listing six cases barring torts and conversion claims under the economic loss doctrine).

The Court, accordingly, dismisses Plaintiff's Fifth and Tenth Causes of Action.

### E.    Declaratory judgment (Eleventh, Twelfth, and Thirteenth Causes of Action)

Plaintiff's Eleventh, Twelfth, and Thirteenth Causes of Action seek declaratory judgment. "Declaratory relief is a remedy, not a cause of action." *DeCozen Chrysler Jeep Corp. v. Fiat Chrysler Autos., LLC*, No. 22-68, 2025 WL 822995, at *5 (D.N.J. Mar. 13, 2025). A plaintiff "may seek a declaratory judgment as a remedy in connection with one or more of its substantive claims."

*Hobson v. Hartford Ins. Co. of the Midwest*, No. 21-20696, 2022 WL 4536470, at *6 (D.N.J. Sep. 28, 2022). Because the Court has dismissed each of Plaintiff's substantive claims against Caring Connections, it also dismisses Plaintiff's declaratory judgment claim against Caring Connections. *Graber v. Westfield Ins. Co.*, No. 21-3313, 2024 WL 3927211, at *6 (E.D. Pa. Aug. 23, 2024) (dismissing plaintiff's declaratory judgment claims because it dismissed plaintiff's underlying substantive claims); *Raciti v. Rushmore Loan Mgmt. Servs., LLC*, 412 F. Supp. 3d 462, 472 (D.N.J. 2019) (same).

Regarding the Feldheims, Plaintiff's declaratory judgment claims "cannot survive because [they are] duplicative of [its] breach of contract claim." *Vincent Cusumano Architect P.C. v. Berkshire Hathaway Direct Ins. Co.*, No. 23-22970, 2025 WL 957699, at *4 (D.N.J. Mar. 29, 2025) (explaining that "Courts in this Circuit will 'routinely dismiss declaratory judgement claims that are duplicative of breach of contract claims'" (citation omitted)). Here, Plaintiff's declaratory judgment claims allege that the Feldheims "breached the terms of [the] Polic[ies]," and that they were "not entitled to coverage." (Compl. ¶¶ 131, 135.) Because "adjudication of the breach of contract claim will resolve the same issue," the Court dismisses the declaratory judgment claims against the Feldheims. *See AV Design Servs., LLC. v. Durant*, No. 19-8688, 2021 WL 1186842, at *12-13 (D.N.J. Mar. 30, 2021) (dismissing a declaratory judgment claim because it was duplicative of the action's breach of contract claim).

The Court, accordingly, dismisses Plaintiff's Eleventh, Twelfth, and Thirteenth Causes of Action.

IV.    **CONCLUSION**

For the reasons set forth herein, Caring Connections' Motion to Dismiss is granted. The Feldheims' Motion to dismiss is granted in part and denied in part. The Court will issue an Order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

DATED: MARCH 26, 2026

17